# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| CAMILLA L. BYERLY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 1:09CV138RWS/MLM |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision of Michael J. Astrue, Commissioner of Social Security, ("Defendant") denying the application for Disability Insurance Benefits under Title II of the Social Security Act (the "Act"), 42 U.S.C. § 401 et seq., filed by Camilla Byerly ("Plaintiff"). Plaintiff has filed a brief in support of the Complaint. Doc. 15. Defendant has filed a brief in support of his answer. Doc. 19. This matter was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1). Doc. 5.

## I.
## PROCEDURAL HISTORY

Plaintiff filed an application for disability benefits on June 21, 2006, alleging a disability onset date of September 14, 2004. Tr. 95-101. On September 20, 2006, Plaintiff's claim was denied, and she filed a timely request for a hearing before an administrative law judge ("ALJ"). Tr. 57-58, 61. A hearing was held before an ALJ on December 10, 2007. Tr. 19-55. On February 20, 2008, the ALJ issued a decision finding that Plaintiff was not disabled through the date of the decision. Tr. 4-18 On July 25, 2009, the Appeals Council denied Plaintiff's request for review of the ALJ's decision. Tr. 1-3. Thus, the decision of the ALJ stands as the final decision of the Commissioner.

## II.
## LEGAL STANDARDS

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920, 404.1529. "'If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled.'" Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005) (quoting Eichelberger v. Barnhart, 390 F.3d 584, 590-91 (8th Cir. 2004)). In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits. 20 C.F.R. § § 416.920(b), 404.1520(b). Second, the claimant must have a severe impairment. 20 C.F.R. §§ 416.920(c), 404.1520(c). The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities … ." Id. "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work." Page v. Astrue, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting Caviness v. Massanari, 250 F.3d 603, 605 (8th Cir. 2001) (citing Nguyen v. Chater, 75 F.3d 429, 430-31 (8th Cir. 1996)).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations. 20 C.F.R. § § 416.920(d), 404.1520(d); Part 404, Subpart P, Appendix 1. If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. Id.

Fourth, the impairment must prevent claimant from doing past relevant work. 20 C.F.R. § § 416.920(e), 404.1520(e). The burden rests with the claimant at this fourth step to establish his or her Residual Functional Capacity ("RFC"). Steed v. Astrue, 524 F.3d 872, 874 n.3 (8th Cir. 2008)

("Through step four of this analysis, the claimant has the burden of showing that she is disabled."); Eichelberger, 390 F.3d at 590-91; Masterson v. Barnhart, 363 F.3d 731, 737 (8th Cir. 2004); Young v. Apfel, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). The ALJ will review a claimant's residual functional capacity and the physical and mental demands of the work the claimant has done in the past. 20 C.F.R. § 404.1520(f).

Fifth, the severe impairment must prevent claimant from doing any other work. 20 C.F.R. § §416.920(g), 404.1520(g). At this fifth step of the sequential analysis, the Commissioner has the burden of production to produce evidence of other jobs in the national economy that can be performed by a person with the claimant's RFC. Steed, 524 F.3d at 874 n.3; Young, 221 F.3d at 1069 n.5. If the claimant meets these standards, the ALJ will find the claimant to be disabled. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." Id. See also Harris v. Barnhart, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)); Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."); Charles v. Barnhart, 375 F.3d 777, 782 n.5 (8th Cir. 2004) ("[T]he burden of production shifts to the Commissioner at step five to submit evidence of other work in the national economy that [the claimant] could perform, given her RFC").

Even if a court finds that there is a preponderance of the evidence against the ALJ's decision, that decision must be affirmed if it is supported by substantial evidence. Clark v. Heckler, 733 F.2d 65, 68 (8th Cir. 1984). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002). See also Cox v. Astrue, 495 F.3d 614, 617 (8th Cir. 2007). In Bland v. Bowen, 861 F.2d 533 (8th Cir. 1988), the Eighth Circuit Court of Appeals held:

> [t]he concept of substantial evidence is something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the Secretary may decide to grant or deny benefits without being subject to reversal on appeal.

Id. at 535. See also Lacroix v. Barnhart, 465 F.3d 881, 885 (8th Cir. 2006) ("[W]e may not reverse merely because substantial evidence exists for the opposite decision.") (quoting Johnson v. Chater, 87 F.3d 1015, 1017 (8th Cir. 1996)); Hartfield v. Barnhart, 384 F.3d 986, 988 (8th Cir. 2004) ("[R]eview of the Commissioner's final decision is deferential.").

It is not the job of the district court to re-weigh the evidence or review the factual record de novo. Cox, 495 F.3d at 617; Guillams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); McClees v. Shalala, 2 F.3d 301, 302 (8th Cir. 1994); Murphy v. Sullivan, 953 F.2d 383, 384 (8th Cir. 1992). Instead, the district court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion. Davis v. Apfel, 239 F.3d 962, 966 (8th Cir. 2001) (citing McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000)). Weighing the evidence is a function of the ALJ, who is the fact-finder. Benskin v. Bowen, 830 F.2d 878, 882 (8th Cir. 1987). See also Onstead v. Sullivan, 962 F.2d 803, 804 (8th Cir. 1992) (holding that an ALJ's decision is conclusive upon a reviewing court if it is supported by "substantial evidence"). Thus, an administrative decision which is supported by substantial evidence is not subject to reversal merely because substantial evidence may also support an opposite conclusion or because the reviewing court would have decided differently. Krogmeier, 294 F.3d at 1022 (internal citations omitted). See also Eichelberger, 390 F.3d at 589; Nevland v. Apfel, 204 F.3d 853, 857 (8th Cir. 2000) (quoting Terrell v. Apfel, 147 F.3d 659, 661 (8th Cir. 1998)); Hutsell v. Massanari, 259 F.3d 707, 711 (8th Cir. 2001) (internal citations omitted).

To determine whether the Commissioner's final decision is supported by substantial evidence, the Court is required to review the administrative record as a whole and to consider:

(1) The findings of credibility made by the ALJ;

(2) The education, background, work history, and age of the claimant;

(3) The medical evidence given by the claimant's treating physicians;

(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;

(5) The corroboration by third parties of the claimant's physical impairment;

(6) The testimony of vocational experts based upon proper hypothetical questions which fairly set forth the claimant's physical impairment; and

(7) The testimony of consulting physicians.

Brand v. Sec'y of Dept. of Health, Educ. & Welfare, 623 F.2d 523, 527 (8th Cir. 1980); Cruse v. Bowen, 867 F.2d 1183, 1184-85 (8th Cir. 1989).

Additionally, an ALJ's decision must comply "with the relevant legal requirements." Ford v. Astrue, 518 F.3d 979, 981 (8th Cir. 2008).

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416(i)(1)(A); 42 U.S.C. § 423(d)(1)(A).

"While the claimant has the burden of proving that the disability results from a medically determinable physical or mental impairment, direct medical evidence of the cause and effect relationship between the impairment and the degree of claimant's subjective complaints need not be produced." Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). When evaluating evidence of pain, the ALJ must consider:

> (1) the claimant's daily activities;
>
> (2) the subjective evidence of the duration, frequency, and intensity of the claimant's pain;
>
> (3) any precipitating or aggravating factors;
>
> (4) the dosage, effectiveness, and side effects of any medication; and
>
> (5) the claimant's functional restrictions.

Baker v. Sec'y of Health & Human Servs., 955 F.2d. 552, 555 (8th Cir. 1992); Polaski, 739 F.2d at 1322. The absence of objective medical evidence is just one factor to be considered in evaluating the plaintiff's credibility. Id. The ALJ must also consider the plaintiff's prior work record, observations by third parties and treating and examining doctors, as well as the plaintiff's appearance and demeanor at the hearing. Id.; Cruse, 867 F.2d at 1186.

The ALJ must make express credibility determinations and set forth the inconsistencies in the record which cause him to reject the plaintiff's complaints. Guillams, 393 F.3d at 801; Masterson v. Barnhart, 363 F.3d 731, 738 (8th Cir. 2004); Lewis v. Barnhart, 353 F.3d 642, 647 (8th Cir. 2003); Hall v. Chater, 62 F.3d 220, 223 (8th Cir. 1995). It is not enough that the record contains inconsistencies; the ALJ must specifically demonstrate that he considered all of the evidence. Robinson, 956 F.2d at 841; Butler v. Sec'y of Health & Human Servs., 850 F.2d 425, 429 (8th Cir. 1988). The ALJ, however, "need not explicitly discuss each Polaski factor." Strongson v. Barnhart, 361 F.3d 1066, 1072 (8th Cir. 2004). See also Steed, 524 F.3d at 876 (citing Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000)). The ALJ need only acknowledge and consider those factors. Id. Although credibility determinations are primarily for the ALJ and not the court, the ALJ's credibility assessment must be based on substantial evidence. Rautio v. Bowen, 862 F.2d 176, 179 (8th Cir. 1988); Millbrook v. Heckler, 780 F.2d 1371, 1374 (8th Cir. 1985).

RFC is defined as what the claimant can do despite his or her limitations, 20 C.F.R. § 404.1545(a), and includes an assessment of physical abilities and mental impairments. 20 C.F.R. § 404.1545(b)-(e). The Commissioner must show that a claimant who cannot perform his or her past relevant work can perform other work which exists in the national economy. Karlix v. Barnhart, 457 F.3d 742, 746 (8th Cir. 2006); Nevland, 204 F.3d at 857 (citing McCoy v. Schweiker, 683 F.2d 1138, 1146-47 (8th Cir. 1982) (en banc)). The Commissioner must first prove that the claimant retains the residual functional capacity to perform other kinds of work. Goff, 421 F.3d at 790; Nevland, 204 F.3d at 857. The Commissioner has to prove this by substantial evidence. Warner v. Heckler, 722 F.2d 428, 431(8th Cir. 1983). Second, once the plaintiff's capabilities are established, the Commissioner has the burden of demonstrating that there are jobs available in the national economy that can realistically be performed by someone with the plaintiff's qualifications and capabilities. Goff, 421 F.3d at 790; Nevland, 204 F.3d at 857.

To satisfy the Commissioner's burden, the testimony of a vocational expert may be used. An ALJ posing a hypothetical to a vocational expert is not required to include all of a plaintiff's limitations, but only those which he finds credible. Goff, 421 F.3d at 794 ("[T]he ALJ properly included only those limitations supported by the record as a whole in the hypothetical."); Rautio, 862 F.2d at 180. Use of the Medical-Vocational Guidelines is appropriate if the ALJ discredits the plaintiff's subjective complaints of pain for legally sufficient reasons. Baker v. Barnhart, 457 F.3d 882, 894-95 (8th Cir. 2006); Carlock v. Sullivan, 902 F.2d 1341, 1343 (8th Cir. 1990); Hutsell, 892 F.2d at 750.

### III.
### DISCUSSION

The issue before the court is whether substantial evidence supports the Commissioner's final determination that Plaintiff was not disabled. Onstead, 962 F.2d at 804. Thus, even if there is

substantial evidence that would support a decision opposite to that of the Commissioner, the court must affirm his decision as long as there is substantial evidence in favor of the Commissioner's position. Cox, 495 F.3d at 617; Krogmeier, 294 F.3d at 1022.

Plaintiff alleged that she was disabled due to arthritis in and injury to her back, chronic pain, bone spurs, muscle spasms, arm and leg numbness, headaches, and osteoporosis. In his February 20, 2008 decision, the ALJ found that Plaintiff had not engaged in substantial gainful activity since September 15, 2004, her alleged onset date; that Plaintiff's disc disease did not cause more than a mild limitation in any of the functional areas to be considered; that she did not have an impairment that met or equaled a listed impairment; that Plaintiff had the RFC for the full range of light work; that she could not perform her past relevant work; that there were jobs in the national economy which Plaintiff could perform; and that, therefore, she was not disabled through the date of the ALJ's decision. With her request for review by the Appeals Council, Plaintiff submitted additional medical records, including records addressing her December 9, 2008 microdiscectomy and subsequent treatment. The Appeals Council found, on July 25, 2009, that arguments raised by Plaintiff did not provide a basis for changing the ALJ's decision.

Plaintiff contends that the ALJ's decision is not supported by substantial evidence because the ALJ improperly considered or gave improper weight to investigation reports from Special Agent Diane Stowe of the Cooperative Disability Investigation ("CDI") Unit; because the ALJ and/or the Appeals Council did not consider all the medical records; because the ALJ erred in regard to his credibility findings; because the ALJ erred in finding that Plaintiff had the RFC to perform the full range of light work; because the ALJ did not fully develop the record; because the ALJ erred in finding that there was work other than Plaintiff's past relevant work which she could perform; and

because the ALJ should have solicited the testimony of a VE because Plaintiff's pain is a non-exertional impairment.

**A.     ALJ's Credibility Findings:**

As set forth more fully above, the ALJ's credibility findings should be affirmed if they are supported by substantial evidence on the record as a whole and a court cannot substitute its judgment for that of the ALJ. Guillams V. Barnhart, 393 F.3d 798, 801(8th Cir. 2005); Hutsell, 892 F.2d at 750; Benskin, 830 F.2d at 882. To the extent that the ALJ did not specifically cite Polaski, case law, and/or Regulations relevant to a consideration of Plaintiff's credibility, as also more fully set forth above, this is not necessarily a basis to set aside an ALJ's decision where the decision is supported by substantial evidence. Randolph v. Barnhart, 386 F.3d 835, 842 (8th Cir. 2004); Wheeler v. Apfel, 224 F.3d 891, 896 n.3 (8th Cir. 2000); Reynolds v. Chater, 82 F.3d 254, 258 (8th Cir. 1996); Montgomery v. Chater, 69 F.3d 273, 275 (8th Cir. 1995).   Additionally, an ALJ need not methodically discuss each Polaski factor if the factors are acknowledged and examined prior to making a credibility determination; where adequately explained and supported, credibility findings are for the ALJ to make.  See Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000)). See also Tucker v. Barnhart, 363 F.3d 781, 783 (8th Cir. 2004) ("The ALJ is not required to discuss each Polaski factor as long as the analytical framework is recognized and considered."); Strongson, 361 F.3d at 1072; Brown v. Chater, 87 F. 3d 963, 966 (8th Cir. 1996).  In any case, "[t]he credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts."  Pearsall v. Massanari, 274 F.3d 1211, 1218 (8th Cir. 2001).  "If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, [a court] will normally defer to the ALJ's credibility determination."  Gregg v. Barnhart, 354 F.3d 710, 714 (8th Cir. 2003).  See also Cox v. Barnhart, 471 F.3d 902, 907 (8th

Cir. 2006). For the following reasons, the court finds that the reasons offered by the ALJ in support of his credibility determination are based on substantial evidence.

First, the ALJ considered the August 23, 2006 investigation report compiled by Agent Stowe. In particular, the ALJ considered that Agent Stowe reported that she began her investigation at the behest of the Disability Determinations Section ("DDS"). The DDS had noted that Plaintiff had filed multiple disability applications in which she alleged back and neck pain and that Plaintiff's allegations were less than credible based on the medical evidence. Agent Stowe reported that, upon requesting that the investigation be conducted, the DDS stated that "examining doctors [ ] noted only a fair effort on [Plaintiff's] part during motor strength and grip strength testing" and that there was a medical source opinion in the file that stated that Plaintiff "could be capable of mild to moderate physical activity." Tr. 150. Agent Stowe also noted in her report that Plaintiff stated, in a June 27, 2006 Questionnaire, that she occasionally walked her dog; that she only left the house when necessary; and that she had problems lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, and climbing stairs. Tr. 151.

The ALJ also considered that Agent Stowe observed Plaintiff attending a medical appointment on August 1, 2006; that Plaintiff arrived in a 4X4 pick-up truck, which appeared higher than an average truck; that Plaintiff was dropped off at the front door of the medical office; that Plaintiff departed the truck with no difficulty and walked to the office with no noticeable problem; that, when Plaintiff exited the building, she was smoking a cigarette and *walked* about fifty yards to the awaiting vehicle at a *normal speed and pace*; that, when entering the truck, Plaintiff opened the door herself, *reaching above her head* for the handle; that the height of the truck seat was just above Plaintiff's waist, requiring *her to step up* to enter the vehicle; and that Agent Stowe followed Plaintiff from the doctor's office to the DDS office where Plaintiff "exhibited the same behavior entering and leaving

the building." Tr. 11. The court notes that Agent Stowe further reported that, when Plaintiff got back into the truck after her doctor's appointment, she "sat her purse in the floorboard, *reached above her head* and grabbed the handle at the top of the door with her right hand to get in"; that "she did so as she was carrying her cigarette and a small paper bag in her left hand"; that she "then sat down quickly with no hesitation"; and that "[a]fter she sat down she *bent over* towards her purse." Tr. 152.

Additionally, the ALJ considered that Agent Stowe observed Plaintiff on numerous occasions at her apartment from July 25, 2006, through August 15, 2006; that on August 2, 2006, Agent Stowe observed Plaintiff make several trips to her daughter's apartment, two doors to the right of hers; that, on these trips to her daughter's apartment, Plaintiff "*walked with no problem* and at one point, she appeared *walking a large dog* on a leash"; that, on August 10, 2006, Agent Stowe observed Plaintiff exit her daughter's apartment accompanied by one of her grandchildren; that, on this date, Plaintiff sat in a lawn chair with no noticeable difficulty, smoked a cigarette, unfolded a small lawn chair while seated, and handed the small lawn chair to her grandchild to sit in; and that "at no time did [Plaintiff] appear to have any type of physical impairment or be in any pain." Tr. 11-12 (emphasis added). The court notes that Agent Stowe also reported that when she saw Plaintiff with a large dog on a leash on August 2, 2006, Plaintiff "didn't appear to have any trouble with the large dog pulling on the leash." Tr. 153. The court further notes that Agent Stowe reported that "*it appeared that [Plaintiff] watched at least two of her grandsons on a regular basis*," and that she saw the children "*at both residences when their parents' vehicles ... were gone*." Tr. 153 (emphasis added). Nonetheless, Plaintiff testified that when she watched her grandchildren, their father was present. The ALJ further considered that Agent Stowe stated that she met with Plaintiff personally on August 22, 2006; that, during this meeting, Plaintiff appeared "to be in good spirits and walked fine, although she was

somewhat guarded"; that Plaintiff "sat down in an easy chair and did not make any comments regarding pain or being uncomfortable during the interview"; and that *Plaintiff denied that she watched her three grandchildren "on a daily basis*, despite the fact that Agent Stowe, in the course of her surveillance, observed [Plaintiff] to be caring for the children during the day." Tr. 12 (emphasis added). Upon discrediting Plaintiff's complaints of pain, the ALJ considered that "on at least three occasions Agent Stowe observed [Plaintiff] going about her daily activities with no signs of physical impairment or debilitating pain. [Plaintiff] was able to sit, walk, attend appointments, and take care of her young grandchildren with no overt signs of distress or difficulty." The ALJ concluded that Agent Stowe's observations significantly detracted from Plaintiff's overall credibility. Tr. 13-14. Despite Plaintiff's contention to the contrary, an ALJ must give full consideration to observations of third parties regarding a claimant's alleged disability. Gregg v. Barnhart, 354 F.3d 710, 713 (8th Cir. 2003). More specifically, an ALJ may properly give consideration to a CDI report. Robert v. Astrue, 2010 WL 715340, at *7-8 (D. Mass, Feb. 25, 2010) (holding that the ALJ properly considered the CDI investigator's report and noting that the claimant did not question the credentials of the investigator). The court finds, therefore, that the ALJ properly considered Agent Stowe's report and that the ALJ's decision in this regard is supported by substantial evidence.

Second, the ALJ considered Plaintiff's daily activities, including those described by Agent Stowe, and found that Plaintiff's daily activities were inconsistent with Plaintiff's claim that she was disabled. The court notes that Plaintiff stated in a Function Report - Adult that she made coffee and fixed "a small breakfast"; that she "work[ed] on picking up [her] house"; that she made "simple lunches & dinners"; that she "occasionally" walked her puppy; that she dusted and did the dishes on a daily basis; that, once a week, she shopped for groceries, cleaning supplies, and clothing; that she went to the grocery store and the post office on a regular basis; and that she talked to her daughter

on a daily basis. Tr. 135-39. While the undersigned appreciates that a claimant need not be bedridden before she can be determined to be disabled, Plaintiff's daily activities can nonetheless be seen as inconsistent with her subjective complaints of a disabling impairment and may be considered in judging the credibility of complaints. Eichelberger, 390 F.3d at 590 (holding that the ALJ properly considered that the plaintiff watched television, read, drove, and attended church upon concluding that subjective complaints of pain were not credible); Dunahoo v. Apfel, 241 F.3d 1033, 1038 (8th Cir. 2001); Onstead, 962 F.2d at 805; Murphy v. Sullivan, 953 F.2d 383, 386 (8th Cir. 1992); Benskin, 830 F.2d at 883; Bolton v. Bowen, 814 F.2d 536, 538 (8th Cir. 1987). Indeed, the Eighth Circuit holds that allegations of disabling "pain may be discredited by evidence of daily activities inconsistent with such allegations." Davis v. Apfel, 239 F.3d 962, 967 (8th Cir. 2001) (citing Benskin, 830 F.2d at 883). "Inconsistencies between [a claimant's] subjective complaints and [his] activities diminish [his] credibility." Goff, 421 F.3d at 792(citing Riggins, 177 F.3d at 692). See also Haley v. Massanari, 258 F.3d 742, 748 (8th Cir. 2001); Nguyen, 75 F.3d at 439-31 (holding that a claimant's daily activities including visiting neighbors, cooking, doing laundry, and attending church were incompatible with disabling pain and affirming denial of benefits at the second step of analysis). "[S]ubjective complaints of pain cannot be disregarded solely because there is no supporting medical evidence, but they can be discounted if the ALJ finds inconsistencies in the record as a whole." Zeiler v. Barnhart, 384 F.3d 932, 936 (8th Cir. 2004) (citing Johnson v. Chater, 108 F.3d 942, 947 (8th Cir. 1997)). As such, the court finds that the ALJ properly considered Plaintiff's daily activities and that his decision, in this regard, is supported by substantial evidence.

Third, the ALJ considered that the objective medical evidence failed to support Plaintiff's claim of debilitating back pain. Although an ALJ may not disregard a claimant's subjective allegations because they are not fully supported by objective medical evidence, an ALJ may properly

discount subjective complaints if inconsistencies exist in the record as a whole. Gonzalez v. Barnhart, 465 F.3d 890, 895 (8th Cir. 2006) (citing Ramirez v. Barnhart, 292 F.3d 576, 581 (8th cir. 2002)); 20 C.F.R. § § 404.1529(c), 416.929(c). In particular, the ALJ considered that "radiographic evidence showed only mild to moderate disc degeneration with at best mild foraminal stenosis." The ALJ also considered that Nurse Practitioner Sarah Froemsdorf reported, on July 26, 2005, that Plaintiff had recently undergone an MRI; that Plaintiff had been receiving epidural injections at a pain clinic; that Plaintiff reported continuing neck pain, despite medications and injections; that Plaintiff had decreased range of motion in her neck and trapezius muscles; and that Plaintiff's arms moved without difficulty. Tr. 10. The ALJ further considered that R.B. Voszler, M.D., saw Plaintiff, on July 26, 2006, for continued back pain; that Dr. Voszler reported, on July 26, 2006, that Plaintiff had bilateral tenderness about the sacroiliac joint and that he started Plaintiff on medication; that Dr. Voszler reported, on September 18, 2006, that Plaintiff said she was still having back pain despite injections at a pain clinic; and that Plaintiff continued to see Dr. Voszler into May 2007, with no resolution of her back pain. Tr. 10. The ALJ considered that x-rays taken on September 15, 2006, showed a normal alignment of the lumbar spine with no evidence of fracture or significant disc space narrowing, and that these x-rays also showed that surgical hardware from a prior fusion was intact and in an adequate position. The ALJ considered that Andrew Walker, M.D., reported that he saw Plaintiff for pain management, on June 13, 2007, when he began a series of epidural steroid injections, which continued through October 2007, and that Plaintiff reported that this treatment "had not helped her at all." Tr. 11. The ALJ further considered that August 1, 2006 x-rays showed that hardware from Plaintiff's prior fusion was intact, and that she had "moderate degenerative disc space narrowing at L2-3 and L3-4, mild degenerative disc space narrowing at L4-5, and mild degenerative facet changes at L3-4 and L4-5, with mild foraminal stenosis at L4-5." Tr. 11.

The court notes that the additional records submitted to the Appeals Council included a report from Joel West Ray, M.D., dated November 14, 2008, in which Dr. Ray stated that his impression, upon evaluation of Plaintiff, included chronic neck and back pain, history of stress incontinence, osteoporosis, "depression - controlled with medicines," osteoarthritis, and tobacco abuse. Dr. Ray further reported that, in regard to Plaintiff's neck pain, "[i]nfrequently, she'll have symptoms that can go into her right or left upper extremity. She does not appear to describe these intermittent symptoms in any specific dermatomal pattern." Dr. Ray also reported, on November 14, 2008, that Plaintiff was alert and oriented; that her motor strength was 5/5 throughout; that her sensation was intact to pinprick and light touch; that Plaintiff denied any left lower extremity symptoms; that she had no complaints of incontinence; that Plaintiff smoked one pack of cigarettes a day; and that her heart rate and rhythm were regular without murmurs. Tr. 247-50. A surgery report from Dr. Ray, reflects that he performed a microdiscectomy on Plaintiff on December 9, 2008. Dr. Ray reported that, prior to the surgery, MRI scans of the cervical spine showed a "rather large disc with moderate to severe stenosis at C5-6"; that at C4-5 there was a "more mild central disc"; that, at C6-7, there was a broad based central disc; that there were no complications during the surgery; and that "post placement film showed appropriate alignment." Tr. 241-44.

A January 21, 2009 report from Dr. Ray states that since Plaintiff's December 9, 2008 surgery, she had "*done spectacularly well*"; that her *x-rays* of that date looked "*excellent*"; that the x-rays showed "*very good alignment*"; that Dr. Ray "want[ed] to see with this many levels a little further fusion occurring but it look[ed] very satisfactory"; that he wanted Plaintiff to wear a collar for six more weeks and do a follow-up scan." Tr. 239. Dr. Ray also reported on January 21, 2009 that, in regard to her neck pain, Plaintiff said that she "*infrequently" had symptoms* that could "go into her right or left upper extremity," and that Plaintiff had a history of stress incontinence,

osteoporosis, and tobacco abuse. Tr. 239-40. The court finds that the ALJ properly considered that objective medical evidence failed to support Plaintiff's claim of debilitating back pain and that substantial evidence on the record, including post-hearing evidence submitted to the Appeals Council,[1] supports his decision in this regard.

Fourth, the ALJ considered that none of Plaintiff's physicians encouraged her not to work or found her to be disabled. A record that contains no physician opinion of disability detracts from claimant's subjective complaints. See Edwards v. Sec'y of Health & Human Servs., 809 F.2d 506, 508 (8th Cir. 1987); Fitzsimmons v. Mathews, 647 F.2d 862, 863 (8th Cir. 1981). The court finds that the ALJ properly considered that no physician opined that Plaintiff is disabled and that the ALJ's decision in this regard is supported by substantial evidence.

Fifth, the court notes, as discussed above, that Plaintiff had good results with steroid injections and that, one month after Plaintiff's December 2008 surgery, it was reported that she was doing "spectacularly well." Tr. 10-11, 191, 218, 239. "An impairment which can be controlled by

---

[1]     Plaintiff submitted medical records to the Appeals Council which records were not considered by the ALJ. The Eighth Circuit Court of Appeals has directed that the federal courts within this Circuit shall consider the Appeals Council evidence even when the Appeals Council denies the review. See Nelson v. Sullivan, 966 F.2d 363, 366 (8th Cir. 1992). In Nelson, the court stated that "[t]he newly submitted evidence is to become part of what we will loosely describe here as the 'administrative record,' even though the evidence was not originally included in the ALJ's record." Nelson, 966 F.2d at 366. If the Appeals Council considers that new evidence but declines to review the case, the court is to "review the ALJ's decision and determine whether there is substantial evidence in the administrative record which now includes the new evidence, to support the ALJ's decision." Nelson, 966 F.2d at 366. Therefore, this court, in reviewing the ALJ's decision, must consider the medical records submitted to the Appeals Council and which were not before the ALJ at the time he rendered his decision. In any case, when the Appeals Council has considered newly submitted evidence, the role of the reviewing court "is limited to deciding whether the administrative law judge's determination is supported by substantial evidence on the record as a whole, including the new evidence submitted after the determination was made." Riley v. Shalala, 18 F.3d 619, 622 (8th Cir. 1994). The Eighth Circuit has explained, in this regard, that it "means that [a reviewing court] must speculate to some extent on how the administrative law judge would have weighed the newly submitted reports if they had been available for the original hearing." Id.

treatment or medication is not considered disabling." Medhaug v. Astrue, 578 F.3d 805, 813 (8th Cir. 2009).

In conclusion, the court finds that the ALJ properly considered Plaintiff's credibility and that his credibility determination is based on substantial evidence.

**B.      Plaintiff's RFC:**

After considering the evidence of record, the ALJ found that Plaintiff's impairments limited her ability to stand, walk, and sit, so that she is limited to light exertional work. As such, the ALJ found that Plaintiff had the RFC for the full range of light work. Plaintiff contends that the ALJ erred upon reaching this conclusion.

The Regulations define light work as "involv[ing] lifting no more than 20 pounds at a time with frequent lifting or carrying of objects up to 10 pounds." 20 C.F.R. § 404.1567(b). Additionally, "[s]ince frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." SSR 83-10, 1983 WL 31251,*6 (SSA).

The Regulations define RFC as "what [the claimant] can still do" despite his or her "physical or mental limitations." 20 C.F.R. § 404.1545(a). "When determining whether a claimant can engage in substantial employment, an ALJ must consider the combination of the claimant's mental and physical impairments." Lauer v. Apfel, 245 F.3d 700, 703 (8th Cir. 2001). "The ALJ must assess a claimant's RFC based on all relevant, credible evidence in the record, 'including the medical records, observations of treating physicians and others, and an individual's own description of his limitations.'" Tucker v. Barnhart, 363 F.3d 781, 783 (8th Cir. 2004) (quoting McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000)). See also Anderson v. Shalala, 51 F.3d, 779 (8th Cir. 1995). To determine a claimant's RFC, the ALJ must move, analytically, from ascertaining the true extent of the claimant's

impairments to determining the kind of work the claimant can still do despite his or her impairments. Although assessing a claimant's RFC is primarily the responsibility of the ALJ, a "'claimant's residual functional capacity is a medical question.'" Lauer, 245 F.3d at 704 (quoting Singh v. Apfel, 222 F.3d 448, 451 (8th Cir. 2000)). The Eighth Circuit clarified in Lauer, 245 F.3d at 704, that "'[s]ome medical evidence,' Dykes v. Apfel, 223 F.3d 865, 867 (8th Cir. 2000) (per curiam), must support the determination of the claimant's RFC, and the ALJ should obtain medical evidence that addresses the claimant's 'ability to function in the workplace,' Nevland v. Apfel, 204 F.3d 853, 858 (8th Cir. 2000)." Thus, an ALJ is "required to consider at least some supporting evidence from a professional." Id. See also Eichelberger, 390 F.3d at 591.

RFC is "an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities." SSR 96-8p, 1996 WL 374184, at *2 (S.S.A. July 2, 1996). Additionally, "RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis." Id. Moreover, "[i]t is incorrect to find that an individual has limitations or restrictions beyond those caused by his or her medical impairment(s) including any related symptoms, such as pain." Id.

"RFC is an issue only at steps 4 and 5 of the sequential evaluation process." Id. at *3. As stated above, at step 4 the claimant has the burden of persuasion to demonstrate his or her RFC. Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004). "If a claimant establishes [his or] her inability to do past relevant work, then the burden of proof shifts to the Commissioner." Goff, 421 F.3d at 790 (citing Eichelberger, 390 F.3d at 591). In contrast to the first four steps of the sequential evaluation

where the claimant carries the burden of proof, the Commissioner has the burden of production at step 5. Charles v. Barnhart, 375 F.3d 777, 782 n.5 (8th Cir. 2004). At step 5 "[t]he burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner." Goff, 421 F.3d at 790. Also, at step 5, where a claimant's RFC is expressed in terms of exertional categories, it must be determined whether the claimant can do the full range of work at a given exertional level. The claimant must be able to "perform substantially all of the exertional and nonexertional functions required in work at that level. Therefore, it is necessary to assess the individual's capacity to perform each of these functions in order to decide which exertional level is appropriate and whether the individual is capable of doing the full range of work contemplated by the exertional level." Id. In any case, "[a] disability claimant has the burden to establish her RFC." Eichelberger, 390 F.3d at 591 (citing Masterson, 363 F.3d at 737).

Upon making an RFC assessment an ALJ must first identify a claimant's functional limitations or restrictions and then assess his or her work-related abilities on a function-by-function basis. See Masterson, 363 F.3d at 737; Harris v. Barnhart, 356 F.3d 926, 929 (8th Cir. 2004). Pursuant to this requirement, the ALJ found that Plaintiff's subjective complaints were not credible as discussed above. After considering the medical evidence, as well as the record as a whole, the ALJ further found that Plaintiff can perform the full range of light work.

The court notes that Nurse Froemsdorf reported, on July 26, 2005, that Plaintiff's arms moved without difficulty; that September 2006 x-rays showed that Plaintiff's lumbar spine had normal alignment and that her surgical hardware was intact; that August 2006 tests showed that Plaintiff's surgical hardware was intact and that degenerative disc changes were either mild or moderate; that Dr. Ray reported, in November 2008, that Plaintiff's neck pain infrequently went into her upper

extremities, that her motor strength was 5/5, and that Plaintiff denied any lower extremity symptoms; and that Dr. Ray reported, in January 2009, that Plaintiff had done spectacularly well from her recent surgery and that her x-rays looked good. The court finds that the ALJ's conclusion that Plaintiff can engage the full range of light work is consistent with the medical evidence and the ALJ's credibility findings. See McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000) ("The Commissioner must determine a claimant's RFC based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations") (citing Anderson v. Shalala, 51 F.3d 777, 779 (8th Cir. 1995).

To the extent that Plaintiff argues that no physician completed an RFC assessment of her, the responsibility for determining Plaintiff's RFC lies with the ALJ. See 20 C.F.R. § 404.1546(c). It is the ALJ's duty to formulate a claimant's RFC based on all of the evidence of record, which the ALJ in the matter under consideration did. See McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000). As such, Plaintiff's argument regarding an RFC assessment is without merit. The court finds, therefore, that the ALJ's determination of Plaintiff's RFC is based on substantial evidence and that it is consistent with the Regulations and case law.

## C.    Additional Evidence:

Plaintiff contends that, because the record does not include an RFC assessment from a physician, the ALJ should have obtained the opinion of a physician regarding her RFC. As discussed above, it is the role of the ALJ to determine a claimant's RFC. See Tucker, 363 F.3d at 783; Lauer, 245 F.3d at 703. Moreover, the duty to develop the record arises when a record is incomplete. The court has found above that the ALJ's determination of Plaintiff's RFC is supported by substantial evidence. As such, the court further finds that the record was sufficient for the ALJ to determine Plaintiff's RFC. Snead v. Barnhart, 360 F.3d 834, 838 (8th Cir. 2004). Additionally, the court has

found that the ALJ's determination of Plaintiff's RFC is based on substantial evidence. As such, Plaintiff's argument that the ALJ should have obtained an RFC assessment from a physician is without merit.

Plaintiff also contends that this matter should be remanded for the ALJ to consider evidence before the Appeals Council. The court has found above that the ALJ's consideration of Plaintiff's credibility findings and the ALJ's determination of Plaintiff's RFC are based on substantial evidence, including the additional evidence submitted to the Appeals Council. See n. 1 (citing Riley v. Shalala, 18 F.3d 619, 622 (8th Cir. 1994)). As discussed above, records submitted to the Appeals Council reflect that Plaintiff improved after surgery and that she was doing "spectacularly well." Indeed, records submitted to the Appeals Council suggest that Plaintiff's condition continued to improve upon treatment. See Burress v. Apfel, 141 F.3d 875, 879 (8th Cir. 1998). Although the Appeals Council denied Plaintiff's request for review without comment, records reflect that the Appeals Council received the additional records; that it made them a part of the record; that it considered these records; and that it concluded that these records did not provide a basis for changing the decision of the ALJ. Tr. 1-2, 251. See Rehder v. Apfel, 205 F.3d 1056, 1061 (8th Cir. 2000) ("We will remand a case for the consideration of new evidence if the evidence is "material and ... there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g). Material evidence is that which is 'non-cumulative, relevant, and probative of the claimant's condition for the time period for which benefits were denied.'") (quoting Jones v. Callahan, 122 F.3d 1148, 1154 (8th Cir. 1997)).

Moreover, the additional records submitted to the Appeals Council address Plaintiff's condition after the date of the ALJ's decision. The Regulations provide that an application is effective through the date of the ALJ's decision. 20 C.F.R. § 404.620. To the extent Plaintiff

contends that these records reflect that she became disabled after the date of the ALJ's decision, Plaintiff should file another application for benefits. See Riley v. Shalala, 18 F.3d 619, 623 (8th Cir. 1994). As such, the court finds without merit Plaintiff's argument that this matter should be remanded for consideration of the additional evidence which Plaintiff submitted to the Appeals Council.

**D.      Vocational Expert Testimony:**

Plaintiff contends that the ALJ should have solicited the testimony of a vocational expert. The ALJ found that Plaintiff has the RFC for the full range of light work, which finding the court has found is based on substantial evidence. Relying on the Medical-Vocational Guidelines (the "Guidelines"), the ALJ found that there is work in the national economy which Plaintiff can perform.

Resort to the Medical-Vocational Guidelines is appropriate when there are no non-exertional impairments that substantially limit the ability of Plaintiff to perform substantially gainful activity. Indeed, once a determination is made that a claimant cannot perform past relevant work, the burden shifts to the Commissioner to prove there is work in the economy that the claimant can perform. Robinson v. Sullivan, 956 F.2d 836, 839 (8th Cir. 1992). See also Reynolds v. Chater, 82 F.3d 254, 258 (8th Cir. 1996) (holding that when complaints of pain are explicitly discredited by legally sufficient reasons, Guidelines may be used). If the claimant is found to have only exertional impairments, the Commissioner may meet this burden by referring to the Guidelines. See Robinson, 956 F.2d at 839. If, however, the claimant is also found to have non-exertional impairments that diminish the claimant's capacity to perform the full range of jobs listed in the Guidelines, the Commissioner must solicit testimony from a vocational expert to establish that there are jobs in the national economy that the claimant can perform. See id. On the other hand, "'an ALJ may use the Guidelines even though there is a nonexertional impairment if the ALJ finds, and the record supports

the finding, that the nonexertional impairment does not diminish the claimant's residual functional capacity to perform the full range of activities listed in the Guidelines.'" Lucy v. Chater, 113 F.3d 905, 908 (8th Cir. 1997) (quoting Thompson v. Bowen, 850 F.2d 346, 349-50 (8th Cir. 1988)).

A review of the record establishes that substantial evidence supports the ALJ's decision that Plaintiff does not have non-exertional impairments which would preclude the ALJ's reliance upon the Guidelines. Because substantial evidence supports the ALJ's decision that Plaintiff did not suffer from such a non-exertional impairment, the ALJ did not need to utilize the assistance of a VE. See Reynolds, 82 F.3d at 258. Plaintiff's argument that the ALJ should have utilized the testimony of a vocational expert is, therefore, without merit.

## IV.
## CONCLUSION

For the reasons more fully set forth above, the court finds that the ALJ's decision is supported by substantial evidence contained in the record as a whole, and that the Commissioner's decision should be affirmed.

**ACCORDINGLY,**

**IT IS HEREBY RECOMMENDED** that the relief sought by Plaintiff in her Complaint and Brief in Support of Complaint be **DENIED** and that judgment should be entered in favor of Defendant. Doc. 1, Doc. 15.

The parties are advised that they have fourteen (14) days in which to file written objections to these recommendations pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good

cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact. See Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990).

/s/Mary Ann L. lMedler
MARY ANN L.  MEDLER
UNITED STATES MAGISTRATE JUDGE

Dated this 29th day of  October, 2010.